Mary Jo O'Neill, AZ Bar No. 005924
Michael Yeabsley, AZ Bar No. 035244
**EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION,**
**Phoenix District Office**
3300 North Central Ave., Suite 690
Phoenix, Arizona 85012
Telephone: (602) 661-0013
Fax: (602) 640-5071
Email:  mary.oneill@eeoc.gov
        michael.yeabsley@eeoc.gov

Attorneys for Petitioner

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, | **CIVIL ACTION NO.:** |
| Plaintiff, | **COMPLAINT** |
| v. | **(JURY TRIAL DEMAND)** |
| Black Diamond Blade Company d/b/a Cutting Edge Supply and Chrome Craft, | |
| Defendant. | |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 as

amended by the ADA Amendments Act of 2008, Title I of the Civil Rights Act of 1991,

and Title VII of the Civil Rights Act of 1964, to correct unlawful employment practices

on the basis of disability and retaliation, and to provide appropriate relief to Charging

Party Luis Hernandez ("Hernandez"), a person with a disability who was adversely

affected by such practices. As alleged with greater particularity below, Plaintiff Equal Employment Opportunity Commission ("EEOC" or "Commission") alleges Defendant Black Diamond Blade Company d/b/a Cutting Edge Supply and Chrome Craft ("Cutting Edge") violated the ADA when it failed to provide Hernandez with reasonable accommodations, discharged Hernandez because of his disability and/or because of his need for reasonable accommodations, subjected Hernandez to different terms and conditions of employment because of his disability and/or his need for reasonable accommodation, subjected Hernandez to a hostile work environment because of his disability and/or his need for accommodation, interfered with Hernandez's exercise and enjoyment of his rights under the ADA, and retaliated against Hernandez for his engagement in protected activity under the ADA. The EEOC also alleges Cutting Edge violated Title VII by retaliating against Hernandez for engaging in protected activity.

## **JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 (ADA), as amended, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. This action is also authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3).

2.  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Arizona.

## PARTIES

3.  The EEOC is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and Title I of the ADA and is expressly authorized to bring this action.

4.  Cutting Edge is a construction supply company.

5.  At all times relevant, Cutting Edge has continuously been doing business in the State of Arizona and the State of California.

6.  Cutting Edge's Arizona business location is 2220 N. 27th Ave., Phoenix, Arizona 85009.

7.  At all times relevant, Cutting Edge was an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h), and section 101(5) and 101(7) of the ADA, 42 U.S.C. § 12111 (5), (7) which incorporates by reference Section 701(c) of Title VII 42 U.S.C § 2000e(b).

8.  At all times relevant, Cutting Edge has continuously employed between 200–500 employees.

## ADMINISTRATIVE PROCEDURES

9.  More than 30 days prior to the institution of this lawsuit, Charging Party Hernandez filed a charge of discrimination with the EEOC alleging Cutting Edge violated Title VII and the ADA.

10.     Hernandez filed his charge of discrimination on or about September 18, 2019.

11.     The EEOC provided Cutting Edge notice of Hernandez's charge on or about September 26, 2019.

12.     The EEOC conducted an investigation of the allegations Hernandez made in his charge of discrimination.

13.     The EEOC conducted an investigation of the allegations made by Hernandez in his charge of discrimination.

14.     After the investigation, the EEOC issued a Letter of Determination to Cutting Edge on February 16, 2024 finding reasonable cause to believe that the ADA and Title VII had been violated.

15.     The EEOC's Letter of Determination invited Cutting Edge to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

16.     The EEOC and Cutting Edge participated in the conciliation process.

17.     On July 25, 2024, the EEOC issued Cutting Edge a Notice of Failure of Conciliation advising Cutting Edge that the EEOC was unable to secure a conciliation agreement acceptable to the EEOC from Cutting Edge.

18.    All administrative prerequisites to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

19.    Since at least October 2016, Cutting Edge has engaged in unlawful employment practices in Phoenix, Arizona in violation of 42 U.S.C. §§ 12112(a), 12112(b)(5)(A), (b)(5)(B), and § 12203(a)-(b).

20.    Since at least October 2016, Cutting Edge has engaged in unlawful employment practices in Phoenix, Arizona in violation of section 42 U.S.C. § 2000e-3 of Title VII.

## FACTUAL ALLEGATIONS

### Hernandez's Employment with Cutting Edge

21.    Cutting Edge first hired Hernandez as a welder and a machinist at its Phoenix Shop on November 1, 2006, when Cutting Edge bought Tractor Parts, the company for which Hernandez had worked as a welder since 1995.

22.    Hernandez left Cutting Edge on October 12, 2012.

23.    Hernandez returned to work for Cutting Edge on October 10, 2016.

24.    Hernandez received three pay raises while working at Cutting Edge, including a pay raise in January 2019 from $20.50 to $22 per hour.

25.    During his employment at Cutting Edge, Hernandez was managed by Machine and Repair Manager Francisco Venegas, who had the power to hire and fire Hernandez as well as send him home early without pay.

26.    Cutting Edge terminated Hernandez's employment on August 15, 2019.

27.    At the time of his termination, Hernandez had over two decades of welding experience.

**<u>Henandez's Disability and Need for Accommodation</u>**

28.    At all relevant times, Hernandez was a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

29.    At all times relevant, Hernandez had diabetes.

30.    Hernandez's diabetes substantially limited his endocrine system.

31.    Hernandez's diabetes required him to eat at regular intervals to maintain his blood sugar and manage his insulin levels.

32.    At all times relevant, Hernandez was qualified to perform the essential functions of his Machinist/Welder position at Cutting Edge with a reasonable accommodation.

33.    Specifically, Hernandez needed to take short snack breaks of roughly one-minute in duration approximately every two to three hours to treat his diabetes.

34.    Cutting Edge was aware of Hernandez's need for accommodation since at least 2012 and was able to provide this accommodation to Hernandez.

35.    In or around July 2012, Hernandez told Cutting Edge that he had diabetes and Venegas was not allowing him to properly treat his diabetes with snack breaks.

36.    In 2018 or 2019, Venegas demanded that Hernandez provide him with a doctor's note.

37.    Hernandez gave Venegas a doctor's note supporting his need for regular snack breaks to treat his diabetes.

38.     On or around March 6, 2019, Venegas sent an email to Human Resources Administrator Annamarie Gutierrez stating he was aware Hernandez was diabetic and needed to take frequent snack breaks to regulate his blood sugar.

39.     Cutting Edge Controller Brian Tramison also confirmed in his investigative interview with the EEOC that Venegas had talked to him about Hernandez's need for accommodation for his diabetes.

**Venegas's Treatment of Hernandez**

40.     Throughout Hernandez's employment at Cutting Edge from 2016 to 2019, Venegas harassed Hernandez and sent him home without pay because of his diabetes and his need to take snack breaks.

41.     Venegas harassed Hernandez approximately two or three times a week because of his disability and his need for an accommodation.

42.     Some examples of the harassment perpetrated on Hernandez by Venegas included:

a.     When Hernandez would eat outside of the designated break periods, Venegas would scold him for not waiting until break, call him a "pig," and tell Hernandez that he is not worthy of working at Cutting Edge.

b.     Despite being aware for several years that Hernandez needed snack breaks to treat his diabetes, Venegas told Hernandez in 2018 or 2019 that Venegas would terminate Hernandez if he did not bring in a physician's note proving that he needed eating breaks.

c.  When Hernandez produced the note, Venegas read it, tore it up, and told him that his request would result in negative consequences because now everyone else would want to take more breaks.

d.  Despite the note, Venegas often scrutinized Hernandez and would constantly question his eating snacks during his shifts.

43.  Other examples of the harassment perpetrated on Hernandez by Venegas included:

a.  Venegas spied on Hernandez when Hernandez would take bathroom breaks, kicking down the bathroom door if Hernandez was inside longer than 5 minutes, and telling Hernandez that his 5-minute bathroom break was over. Venegas would not engage in this type of behavior with non-Mexican employees and employees who did not have a disability.

b.  Venegas required Hernandez to work long hours without heat protection in the scorching summer heat while allowing non-Mexican employees and employees without a disability to work indoors or in covered spaces.

c.  In June 2019, Venegas suspended Hernandez for four days without pay for smoking but did not discipline at least one other white worker for the same conduct.

d.  When Hernandez asked Venegas why he was being singled out for smoking when Venegas allowed non-Mexican coworkers to smoke

freely, Venegas replied that he could give a write up to whomever he wants.

    e. Co-worker Robert Barboza observed that other, non-Mexican employees routinely smoked without being disciplined by Venegas.

44.    Between October 2016 and August 2019, Venegas sent Hernandez home early without pay approximately one to two times a month for taking short snack breaks to treat his diabetes.

45.    When sending Hernandez home for taking short breaks to treat his diabetes, Venegas told Hernandez, "Get the fuck out of here! Go home to eat at home. Take your day to eat comfortable."

46.    Hernandez was consistently deprived of the accommodation of taking short snack breaks when he was sent home from work early without pay by Vargas.

47.    Hernandez's co-worker also witnessed Venegas tell Team Lead Pedro Lopez to send Hernandez home because he was eating.

**Hernandez's Complaints of Discrimination**

48.    Hernandez complained to Cutting Edge on at least three occasions regarding Venegas's discrimination.

49.    On July 19, 2012, Hernandez complained to Cutting Edge Human Resource employee Martha Alonso that Venegas was harassing and discriminating against him based on his diabetes and national origin, and that Venegas was not allowing him to properly treat his diabetes.

50.    In March 2019, Hernandez complained in person to Cutting Edge Human Resource Administrator Annamarie Gutierrez that he felt he was being discriminated against because he was Mexican and he was having difficulty getting the accommodations he needed to treat his disability.

51.    On August 9, 2019, Hernandez complained in-person to Cutting Edge Human Resources employee Manuel Olaechea regarding Venegas's treatment of him, including that Venegas was discriminating against Hernandez because of his diabetes, his need for reasonable accommodation, and his national origin.

**Hernandez's Discharge**

52.    On or around March 6, 2019, Venegas emailed Human Resources Administrator Annamarie Gutierrez recommending Cutting Edge fire Hernandez in part because he "eats all day, I have asked him to eat only on breaks and lunch, his reply is that he's diabetic and he needs to nibble on food all day."

53.    On June 28, 2019, Cutting Edge safety employee Travis Forester emailed Owner John Brenner telling him that Hernandez had not taken his safety meeting seriously and Hernandez was smoking a cigarette on the clock.

54.    According to Hernandez, he was still on lunch break when the safety meeting started a few minutes early and the designated smoking area is close to where the safety meeting took place, so Hernandez finished his cigarette before joining the meeting. Hernandez denies smoking in, around, or near the shop after the safety meeting.

55.    In response to Forester's email, Brenner instructed Gutierrez to speak with Hernandez and give him a verbal warning.

56.    Brenner did not recommend dismissal. Instead, he said a write-up or dismissal would be appropriate only if the conduct reoccurs.

57.    Ultimately, Hernandez was suspended by Venegas for four days without pay for smoking on the clock. A white employee who was smoking with Hernandez did not get suspended.

58.    After his June 2019 suspension, Hernandez did not smoke outside company-provided breaks and he only smoked in designed smoking areas.

59.    Between June 28, 2019 and August 15, 2019, Hernandez was not warned or disciplined for any work performance issues or any violations of company policy, including any violations connected to smoking.

60.    On August 15, 2019, less than one week after Hernandez had made his August 9 complaint, Team Lead Pedro Lopez called Hernandez into Venegas's office.

61.    Venegas informed Hernandez that he was fired and his services were no longer required.

62.    Venegas did not give a reason for Hernandez's dismissal.

63.    The letter of termination dated August 15, 2019 and signed by Human Resources Administrator Gutierrez stated: "Your dismissal is at-will, which allows the Company to end the employer-employee relationship without notice and without reason."

64.    During the EEOC's investigation, Cutting Edge provide varying reasons for Hernandez's termination, all of which were unsupported by the evidence.

**First Claim for Relief**
**Denial of Reasonable Accommodation**
**42 U.S.C. § 12112(b)(5)(A)**

65.    The allegations in the foregoing paragraphs are hereby incorporated by reference.

66.    Hernandez is an individual who has diabetes, including during all times relevant to this lawsuit.

67.    Accordingly, Hernandez is an individual with a disability as defined under the ADA, 42 U.S.C. § 12012.

68.    Hernandez was qualified and able to perform the essential functions of his welding/machinist position at Cutting Edge with a reasonable accommodation.

69.    Cutting Edge knew that Hernandez needed an accommodation for his diabetes.

70.    The accommodation Hernandez requested would have allowed him to perform the essential functions of the job of his machinist/welding position.

71.    The accommodation Hernandez requested was available for Cutting Edge to provide.

72.    The accommodation Hernandez needed was for Cutting Edge to allow him to take short breaks to eat a snack approximately every two to three hours to treat his diabetes.

73.    Cutting Edge regularly denied Hernandez this accommodation.

74.    Cutting Edge failed to provide Hernandez reasonable accommodation in violation the ADA, 42 U.S.C. § 12112(b)(5)(A).

75.    The effect of the practices complained of in the paragraphs above has been to deprive Hernandez of equal employment opportunities because of his disability.

76.    The unlawful employment practices complained of in the paragraphs above were intentional.

77.    The unlawful employment practices complained of in the paragraphs above were done with malice or reckless indifference to Hernandez's federally protected rights.

<u>**Second Claim for Relief**</u>
**Discharge because of disability and/or the need for accommodation**
**42 U.S.C. § 12112(b)(5)(B)**

78.    The allegations in the foregoing paragraphs are hereby incorporated by reference.

79.    Hernandez is an individual who has diabetes, including during all times relevant to this lawsuit.

80.    Accordingly, Hernandez is an individual with a disability as defined under the ADA, 42 U.S.C. § 12012.

81.    Hernandez was qualified and able to perform the essential functions of his welding/machinist position at Cutting Edge with a reasonable accommodation.

82.    Cutting Edge was aware that Hernandez had a disability.

83.    Cutting Edge was aware Hernandez needed an accommodation for his disability.

84.    The accommodation Hernandez needed was for Cutting Edge to allow him to take short breaks to eat a snack approximately every two to three hours to treat his diabetes.

85.     Cutting Edge terminated Hernandez's employment because of his disability and/or because of the need to provide him a reasonable accommodation for his diabetes in violation of 42 U.S.C. § 12112.

86.     The effect of the practices complained of in the paragraphs above has been to deprive Hernandez of equal employment opportunities because of his disability.

87.     The unlawful employment practices complained of in the paragraphs above were intentional.

88.     The unlawful employment practices complained of in the paragraphs above were done with malice or reckless indifference to Hernandez's federally protected rights.

### THIRD CLAIM FOR RELIEF
**Hostile Work Environment**
**42 U.S.C. § 12112(a)**

89.     The allegations in the foregoing paragraphs are hereby incorporated by reference.

90.     Hernandez is an individual who has diabetes, including during all times relevant to this lawsuit.

91.     Hernandez is an individual with a disability as defined under the ADA, 42 U.S.C. § 12012.

92.     Hernandez was qualified and able to perform the essential functions of his welding/machinist position at Cutting Edge with a reasonable accommodation.

93.     As detailed in the paragraphs above, Cutting Edge subjected Hernandez to severe and/or pervasive unwelcome harassment based on his disability in violation of 42 U.S.C. § 12112(a).

94.     The harassment was both subjectively unwelcome and objectively unreasonable.

95.     Cutting Edge knew or should have known about the harassment to which Hernandez was subjected.

96.     Hernandez complained to Cutting Edge about the harassment on multiple occasions.

97.     Despite this knowledge, Cutting Edge failed to promptly stop and prevent the harassment.

98.     The effect of the practices complained of in the paragraphs above has been to deprive Hernandez of equal employment opportunities because of his disability.

99.     The unlawful employment practices complained of in the paragraphs above were intentional.

100.    The unlawful employment practices complained of in the paragraphs above were done with malice or reckless indifference to Hernandez's federally protected rights.

**FOURTH CLAIM FOR RELIEF**
**Discriminatory Terms and Conditions**
**42 U.S.C. § 12112(a)**

101.    The allegations in the foregoing paragraphs are hereby incorporated by reference.

102.    Hernandez is an individual who has diabetes, including during all times relevant to this lawsuit.

103.     Hernandez is an individual with a disability as defined under the ADA, 42 U.S.C. § 12012.

15

104.    Hernandez was qualified and able to perform the essential functions of his welding/machinist position at Cutting Edge with a reasonable accommodation.

105.    Cutting Edge sent Hernandez home without pay because of his disability and/or his need for reasonable accommodation.

106.    Specifically, Cutting Edge regularly sent Hernandez home early without pay for taking short snack breaks to treat his diabetes.

107.    Cutting Edge discriminated against Hernandez in the terms and conditions of his employment because of his disability, in violation of 42 U.S.C. § 12112(a).

108.    The effect of the practices complained of in the paragraphs above has been to deprive Hernandez of equal employment opportunities because of his disability.

109.    The unlawful employment practices complained of in the paragraphs above were intentional.

110.    The unlawful employment practices complained of in the paragraphs above were done with malice or reckless indifference to Hernandez's federally protected rights.

**FIFTH CLAIM FOR RELIEF**
**Retaliation**
**42 U.S.C. § 12203(a)**

111.    The allegations in the foregoing paragraphs are hereby incorporated by reference.

112.    Hernandez engaged in protected activity under the ADA by requesting reasonable accommodation to treat his diabetes.

113.    Hernandez also engaged in protected activity under the ADA by complaining to Cutting Edge that Venegas was discriminating against him because of his disability and/or his need for accommodation.

114.    Cutting Edge retaliated against Hernandez and sent him home without pay because of his request for reasonable accommodation for his disability.

115.    On August 15, 2019, less than one week after Hernandez's last complaint, Cutting Edge terminated Hernandez's employment because of his request for accommodation and/or his complaints of disability discrimination, in violation of the 42 U.S.C. § 12203(a).

116.    The effect of the practices complained of in the paragraphs above has been to deprive Hernandez of equal employment opportunities because of his disability.

117.    The unlawful employment practices complained of in the paragraphs above were intentional.

### SIXTH CLAIM FOR RELIEF
**Coerce, Intimidate, Threaten, or Interfere**
**42 U.S.C. § 12203(b)**

118.    The allegations in the foregoing paragraphs are hereby incorporated by reference.

119.     Hernandez is an individual with a disability as defined under the ADA, 42 U.S.C. § 12012.

120.    Hernandez was qualified and able to perform the essential functions of his welding/machinist position at Cutting Edge with or without a reasonable accommodation.

121.    On multiple occasions, Hernandez requested reasonable accommodation for his disability.

122.    The accommodation Hernandez requested was to be allowed to take short breaks approximately every two to three hours to treat his diabetes.

123.    Rather than providing the reasonable accommodation to Hernandez, Cutting Edge, through Manager Venegas, repeatedly threatened, intimidated, and/or interfered with Hernandez exercising his right to a reasonable accommodation, in violation of 42 U.S.C. § 12203(b).

124.    The effect of the practices complained of in the paragraphs above has been to deprive Hernandez of equal employment opportunities because of his disability.

125.    The unlawful employment practices complained of in the paragraphs above were intentional.

### SEVENTH CLAIM FOR RELIEF
**Retaliation**
**42 U.S.C. § 2000e-3(a)**

126.    The allegations in the foregoing paragraphs are hereby incorporated by reference.

127.    As described in paragraphs above, Hernandez engaged in protected activity by complaining of what he reasonably believed to be national origin discrimination.

128.    Hernandez complained to Cutting Edge in good faith because he reasonably believed he was being discriminated against because of his national origin.

129.    On August 15, 2019, less than one week after Hernandez's last complaint, Cutting Edge terminated Hernandez in retaliation for him opposing and complaining

about what he reasonably believed was national origin discrimination in violation of 42 U.S.C. § 2000e-3(a).

130.    The effect of the practices complained of in the forgoing paragraphs has been to deprive Hernandez of equal employment opportunities and otherwise adversely affect his status as an employee because he engaged in protected activity.

131.    The unlawful employment practices complained of in the paragraphs above were intentional.

132.    The unlawful employment practices complained of in the paragraphs above were done with malice or reckless indifference to Hernandez's federally protected rights.

## **PRAYER FOR RELIEF**

Wherefore, the EEOC respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Cutting Edge, its officers, successors, assigns, agents, servants, employees, and all persons in active concert or participation with them, from engaging in employment practices that discriminate on the basis of disability and/or retaliation for engaging in protected activity under the ADA or Title VII.

B.    Order Cutting Edge to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities.

C.     Order Cutting Edge to institute and carry out policies, practices, and programs which protect individuals from retaliation for engaging in in protected activity,

such requesting accommodation or complaining about disability or national origin discrimination.

D.    Order Cutting Edge to make Hernandez whole by providing other affirmative relief necessary to eradicate the effects of their unlawful employment practices including but not limited to the rightful place hiring of Hernandez.

E.    Order Cutting Edge to make Hernandez whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

F.    Order Cutting Edge to make Hernandez whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

G.    Order Cutting Edge to pay Hernandez punitive damages for Cutting Edge's malicious and reckless conduct described above in amounts to be determined at trial.

H.    Grant such further relief as the Court deems necessary and proper in the public interest.

I.    Award the Commission its costs of this action.

## **JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its complaint.

RESPECTFULLY SUBMITTED this 27th day of January, 2025.

20

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

/s/ *Mary O'Neill*
MARY O'NEILL
Regional Attorney

/s/ *Michael Yeabsley*
MICHAEL YEABSLEY
Trial Attorney
3300 N Central Ave., Suite 690
Phoenix, AZ 85012
(602) 661-0060
michael.yeabsley@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

Phoenix District Office

**PLEASE NOTE**: For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorney. Duplicate service is not required on the General Counsel, Deputy General Counsel, and Associate General Counsel in Washington, D.C.